# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| CLEAR CHANNEL OUTDOOR HOLDINGS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. N24C-02-208 PAW CCLD |
| ILLINOIS NATIONAL INSURANCE COMPANY, STARR INDEMNITY & LIABILITY COMPANY, QBE INSURANCE CORPORATION, and ACE AMERICAN INSURANCE COMPANY, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Submitted: March 2, 2025
Decided: June 30, 2025

## <u>MEMORANDUM OPINION</u>

*Upon Consideration of Plaintiff's Motion for Partial Summary Judgment*;

## DENIED.

David J. Baldwin, Esq.; Peter C. McGivney, Esq.; and Periann Doko, Esq., of Berger McDermott LLP; Lynda A. Bennett, Esq.; Thomas E. Redburn, Esq.; Jade Sobh, Esq.; Rasmeet K. Chahil, Esq.; and Alexander B. Corson, Esq., of Lowenstein Sandler LLP, *Attorneys for Plaintiff.*

Kurt M. Heyman, Esq.; Aaron M. Nelson, Esq.; and Brendan Patrick McDonnell, Esq., of Heyman Enerio Gattuso & Hirzel LLP; Scott B. Shreiber, Esq.; and Arthur Luk, Esq., of Arnold & Porter Kaye Scholer LLP, *Attorneys for Defendant Illinois National Insurance Company.*

**WINSTON, J.**

## I.    **<u>INTRODUCTION</u>**

Plaintiff Clear Channel Outdoor Holdings, Inc. ("Clear Channel") seeks insurance coverage[1] for response costs it incurred after receiving a tolling request (the "Tolling Request") from the U.S. Securities and Exchange Commission ("SEC"). The insurance policy at issue provides corporate liability coverage for loss arising from any "Securities Claims" for any "Wrongful Acts." Although the insurer does not dispute that the Tolling Request is a "Claim" under the terms of the policy, it argues other language in the policy language precludes coverage.

The pending partial motion for summary judgment requires the Court to answer the following question: whether Clear Channel's response costs "arise from any Securities Claim for any Wrongful Acts." Based on the policy language, the Court concludes: (i) the Tolling Request is not a Securities Claim; and (ii) even if the Tolling Request is a Securities Claim, it does not seek redress in response to any corporate act. Accordingly, Clear Channel's Motion for Partial Summary Judgment is **DENIED**.

---

[1] Clear Channel brought this action for breach of contract against Illinois National Insurance Company ("AIG"), Starr Indemnity & Liability Company ("Starr"), QBE Insurance Corporation ("QBE"), and ACE American Insurance Company ("Chubb") (collectively, the "Insurers"). Complaint (hereinafter "Compl.") ¶ 1. Clear Channel has reached settlement agreements in principle with Defendants Starr, QBE, and Chubb. D.I. 138. Accordingly, Clear Channel's Motion proceeds against Defendant AIG only.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   THE INSURANCE POLICIES

From August 30, 2017, to May 1, 2019, AIG issued a $20 million directors' and officers' liability policy[2] (the "Policy") to iHeartMedia, Inc., covering its controlled entities, including Clear Channel.[3] The Policy provides coverage for two pertinent types of Insureds—individuals and organizations. As to an **Insured Person**,[4] coverage is afforded for **Loss** arising from a **Claim** made against an **Insured Person** and for **Pre-Claim Inquiry Costs** arising from a **Pre-Claim Inquiry**.[5] **Loss** includes **Defense Costs**, which in turn include "reasonable fees, costs and expenses."[6] **Claim** includes "a written demand for monetary, non-monetary or injunctive relief (including, but not limited to . . . any written request to toll or waive an appliable statute of limitations)."[7] **Pre-Claim Inquiry** includes certain "verifiable request[s] for an **Insured Person** (a) to appear at a meeting or

---

[2] D.I. 61 (hereinafter "Op. Br."), Ex. E (hereinafter "AIG Policy").

[3] Compl. ¶¶ 38-42.

[4] Bolded and capitalized terms are defined terms within the Policy.

[5] AIG Policy § 1(A), (B)(ii).

[6] *Id*. § 2(k), (dd).

[7] *Id*. § 2(e)(1).

interview; or (b) produce documents," and **Pre-Claim Inquiry Costs** includes certain costs for responding to a **Pre-Claim Inquiry**.[8]

As to an **Organization**, the Policy affords coverage for **Loss** "arising from any **Securities Claim** made against such **Organization** for any **Wrongful Act** of such **Organization**."[9]  **Securities Claim** is defined as "a **Claim**, other than an investigation of an **Organization** . . . alleging a violation of any federal, state, local or foreign regulation, rule, regulating securities."[10]  The definition of **Securities Claim** continues, in pertinent part:

> Notwithstanding the foregoing, the term "**Securities Claim**" shall:
>
> (i) Include a civil lawsuit, enforcement action or administrative or regulatory proceeding brought by the Securities & Exchange Commission (SEC) or similar federal, state or local authority; or a criminal proceeding brought by the Department of Justice or similar federal, state or local authority against an **Organization**, anywhere in the world alleging a violation of any securities law, regulation or rule, whether statutory or common law, alleging, arising out of, based upon or attributable to the purchase or sale or offer or solicitation of an offer to purchase or sell any securities of an **Organization**;
>
> (ii) Not include any (A) investigation of an **Organization** or (B) any **Claim** brought by any

---

[8] *Id*. §2(q), (u), (bb), (kk).

[9] *Id*. § 1(B)(i)(1).

[10] AIG Policy § 2(uu).

4

**Executive** or **Employee** of [a] **Company** alleging, arising out of, based upon or attributable to the loss of, or failure to receive or obtain, stock, stock warrants, stock options or other securities of a **Company**.[11]

As noted above, **Claim** includes any written request to toll or waive an appliable statute of limitations. And **Wrongful Act** includes "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act."[12] The Policy further defines **Insured** to include any "**Organization**, but only with respect to a **Securities Claim**."[13]

## B.     THE SEC INVESTIGATION AND TOLLING AGREEMENT

In January 2018, Clear Channel discovered that an employee of its then-majority-owned subsidiary, Clear Media Limited ("Clear Media"), had misappropriated funds.[14] In response, Clear Channel and Clear Media initiated internal investigations.[15] Clear Channel notified the SEC in March 2018 that its annual report would be delayed due to the ongoing internal investigations.[16]

---

[11] *Id*.

[12] AIG Policy § 2(yy).

[13] *Id*. § 2(aa).

[14] Op. Br. at 2.

[15] *Id*. at 3.

[16] *Id*.; *see also* Compl. ¶ 15.

5

The SEC initiated a formal investigation in August 2018 arising out of Clear Channel's alleged failure to prevent suspected wrongdoing by certain employees at Clear Media (the "Underlying Investigation").[17] Via the Tolling Request, the SEC requested that Clear Channel toll the statute of limitations for any enforcement action, which Clear Channel agreed (the "Tolling Agreement").[18] In September 2023, the Underlying Investigation resulted in the settlement of the SEC's claims with no admission of wrongdoing by Clear Channel (the "SEC Settlement").[19] Over the course of the Underlying Investigation, Clear Channel incurred legal fees and expenses, and ultimately paid over $26 million in connection with the SEC Settlement.[20]

### C. CLEAR CHANNEL'S INSURANCE CLAIM

On November 2, 2018, Clear Channel notified AIG of the SEC's request for, and its entry into, the Tolling Agreement.[21] Clear Channel informed AIG that the SEC had been investigating Clear Channel after the disclosure of suspected wrongdoing at Clear Media, and at least four Clear Channel executives were

---

[17] Op. Br. at 3; *see also* Compl. ¶ 1.

[18] Op. Br. at 3; *see also* Op. Br., Ex. B (hereinafter "Tolling Request"); *see also* Op. Br., Ex. C (hereinafter "Tolling Agreement").

[19] Op. Br. at 3.

[20] Compl. ¶ 2.

[21] Op. Br. at 6.

interviewed by the SEC.[22] Clear Channel sought coverage for all response costs incurred after and as a result of the Tolling Request.[23] AIG denied coverage, arguing that the matter was "only an investigation" and not a **Securities Claim**, as defined by the Policy.[24]

Clear Channel posits that a substantial portion of the amount incurred to respond to the Underlying Investigation constitutes insurable **Loss** under the Policy.[25] Thus, Clear Channel alleges that AIG has "improperly withheld payment for a vast majority of such **Loss** in contravention of their contractual obligations" under the Policy.[26] The parties dispute whether the Tolling Request qualifies as a **Securities Claim**, as defined under the Policy. Clear Channel argues the Tolling Request triggers coverage because it is a **Claim**, as defined under the Policy, and **Securities Claims** are defined as **Claims**. AIG contends the Tolling Request is part of a SEC investigation and is not a claim for "violation" of any federal, state, or local statute, regulation, rule, or law regulating securities. AIG separately argues that the

---

[22] *Id*. at 7.

[23] *Id*. at 15; D.I. 75 (hereinafter "Ans. Br.") at 13; *see also* D.I. 126 (hereinafter "Reply Br.") at 2 n.2.

[24] Op. Br. at 1.

[25] Compl. ¶ 2.

[26] *Id*.

Tolling Request is not for a **Wrongful Act** because it does not seek redress in response to any conduct by Clear Channel.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "when the record shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law."[27] The moving party bears the burden of demonstrating the undisputed facts entitle it to judgment as a matter of law.[28] When the moving party sustains the initial burden of showing the nonexistence of any material issues of fact, the burden shifts to the non-moving party to substantiate its adverse claim by showing that there are material issues of fact in dispute.[29] If the facts permit reasonable persons to draw from them but one inference, the question is ripe for summary judgment.[30]

### CONTRACT INTERPRETATION

The Delaware Supreme Court has set forth the principles that govern interpretation of an insurance policy:

> Insurance contracts, like all contracts, 'are construed as a whole, to give effect to the intentions of the parties.'

---

[27] Super. Ct. Civ. R. 56(c).

[28] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

[29] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995) (citing *Moore*, 405 A.2d 679, 680).

[30] *Brzoska*, 668 A.2d at 1364 (citing *Wootten v. Kiger*, 226 A.2d 238 (Del. Super. 1967)).

8

Proper interpretation of an insurance contract will not render any provision 'illusory or meaningless.' If the contract language is 'clear and unambiguous, the parties' intent is ascertained by giving the language its ordinary and usual meaning.' Where the language is ambiguous, the contract is to 'be construed most strongly against the insurance company that drafted it.' A contract is not ambiguous simply because the parties do not agree on the proper construction. 'Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'

Insurance contracts should be interpreted as providing broad coverage to align with the insured's reasonable expectations. 'Generally, an insured's burden is to establish that a claim falls within the basic scope of coverage, while an insurer's burden is to establish that a claim is specifically excluded.' Courts will interpret exclusionary clauses with 'a strict and narrow construction . . . [and] give effect to such exclusionary language [only] where it is found to be 'specific,' 'clear,' 'plain,' 'conspicuous,' and 'not contrary to public policy.'[31]

## IV. <u>ANALYSIS</u>

### A. THE TOLLING REQUEST IS NOT A SECURITIES CLAIM.

Clear Channel moves for summary judgment in its favor, seeking coverage for all response costs incurred after and as a result of the Tolling Request.[32] The

---

[31] *RSU Indemnity Co. v. Murdock*, 246 A.3d 887, 905-06 (Del. 2021) (internal citations omitted).

[32] Op. Br. at 18-19, 23-24.

9

Policy does not afford coverage for response costs unless the Tolling Request constitutes a **Securities Claim**, as defined under the Policy.

### 1. INVESTIGATION

Clear Channel argues that the Tolling Request qualifies as a **Securities Claim** because it is a "written request to toll . . . [the] statute of limitations" for entry into a tolling agreement, which is expressly covered under the Policy.[33] AIG counters that the Tolling Request was part of an investigation of Clear Channel, an **Organization**, which is expressly excluded from coverage.[34]

Clear Channel asserts that AIG's interpretation of "investigation" is overly broad and renders the Policy language regarding tolling agreements meaningless.[35] Thus, Clear Channel argues that its interpretation of the Policy—which limits the "investigation" exclusion—follows the rules of construction regarding ambiguities in insurance policies and accomplishes the goal of giving all policy terms meaning.[36] Under Clear Channel's interpretation, the response costs incurred in connection with the "investigation" *before* the Tolling Request would be excluded, while the response costs incurred *after* the Tolling Request would be covered.[37] Thus, the

---

[33] *Id*. at 18-19.

[34] Ans. Br. at 24-25.

[35] Reply Br. at 1.

[36] *Id*. at 12.

[37] *Id*. at 1.

Court must determine whether a **Claim** that is part of an investigation against an Organization is a **Securities Claim**.

Under the Policy, the definition of a **Securities Claim** includes a **Claim**,[38] which is defined separately to expressly include "any written request to toll or waive an applicable statute of limitations."[39]  Directly following the inclusion of **Claim**, the definition of a **Securities Claim** continues: "other than an investigation of an **Organization**" and "*Notwithstanding* the foregoing, the term '**Securities Claim**' shall . . . Not include any [] investigation of an **Organization**."[40]

Because a **Securities Claim** under the Policy must be a "**Claim**, other than an investigation of an **Organization**, made against the **Insured**,"[41] a claim can qualify as both a **Claim** and a **Securities Claim**.  Thus, although an insured must have a **Claim** as defined under the Policy to have a **Securities Claim**, not every **Claim** qualifies as a **Securities Claim**, if it is an investigation of an **Organization**.  This means, **Securities Claims** are limited to a subset of **Claims**—ones that are not investigations.

---

[38] AIG Policy § 2(uu).

[39] *Id*. § 2(e).

[40] *Id*. § 2(uu).

[41] *Id*.

11

The term "investigation" is not defined within the Policy.[42] The Court will interpret clear and unambiguous terms according to their ordinary meaning.[43] Importantly, however, the Court must read a contract as a whole and give each provision and term effect, so as not to render any part of the contract mere surplusage.[44] The Court will not read a contract to render a provision or term "meaningless or illusory."[45]

The Tolling Request undisputedly qualifies as "a written request to toll" the statute of limitations, which falls under the definition of a **Claim**. Therefore, Clear Channel argues that the Policy does not properly consider the situation at hand, in which a Tolling Request is part of an ongoing investigation.[46] Thus, Clear Channel contends for the purposes of the Policy, the Tolling Request constitutes a **Securities Claim** which is explicitly covered under the Policy.[47] AIG's proposed interpretation

---

[42] *See* AIG Policy § 2.

[43] *GMG Capital Investments*, 36 A.3d at 780 (internal citations omitted).

[44] *Aearo Technologies LLC v. ACE American Insurance Company*, 2024 WL 3495121 at *6 (Del. Super. July 16, 2024) (citing *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)).

[45] *Id*. (citing *Osborn ex rel. Osborn v. Kemp*, 991 A.2d at 1159).

[46] Op. Br. at 18. At oral argument, Clear Channel acknowledged that the Tolling Request is part of and did not end the SEC investigation, and that investigations are excluded under the Policy.

[47] *Id*. at 16-18.

of the Policy would result in surplusage and render the grant of coverage for tolling request claims "meaningless or illusory."[48]

AIG maintains that Clear Channel intentionally ignores the difference between the definitions of **Claims** and **Securities Claims** under the Policy.[49] The definitions of **Claim** and **Securities Claim** are different by design.[50] The Policy covers "the **Loss** of an insured *individual* resulting from a **Claim**, but coverage for the **Loss** of an insured entity is limited to a **Securities Claim**."[51] Accordingly, coverage for written tolling requests is provided for *individuals*, and is thus not illusory or meaningless.[52] Hence, AIG asserts that the Tolling Request is a **Claim**, potentially triggering coverage for individuals, but is not a **Securities Claim**, triggering coverage for entities.[53]

As explained above, "[i]n upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein."[54] Construing the agreement as a whole, the Court finds that AIG's proposed

---

[48] *Id*. at 18.

[49] Ans. Br. at 26.

[50] *Id*.

[51] *Id*.

[52] *Id*.

[53] *Id.*

[54] *GMG Capital Investments*, 36 A.3d at 779 (quoting *E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co*., 498 A.2d 1108, 1113 (1985)).

13

interpretation of the Policy gives effect to all provisions and does not result in surplusage. The Policy contains a separate subsection within the definition of **Claim** to address "investigations" (including investigations by the SEC) that may qualify as a **Claim** for insured individuals.[55] The plain language of the Policy provides coverage for such **Claims** against insured individuals, despite excluding coverage for insured **Organizations**. Clear Channel's interpretation would render the term "other than an investigation of an **Organization**" meaningless.

In addition, the term "notwithstanding" is defined by Black's Law Dictionary to mean "despite; in spite of."[56] The only reasonable interpretation of this provision, using the plain meaning of notwithstanding, is that **Claims** that may have fallen within the definition of a **Securities Claim**, in spite of qualifying as a **Securities Claim** under the first half of the definition, cannot constitute a **Securities Claim** under the Policy if said **Claim** involves "an investigation of an **Organization**." Accordingly, even if the Tolling Request constitutes a **Claim** under the Policy, Clear Channel, an **Organization**, is not permitted to recover under the explicit terms of the Policy if the costs incurred are the result of an investigation.[57]

---

[55] AIG Policy § 2(e)(3).

[56] BLACK'S LAW DICTIONARY (12th ed. 2024).

[57] *See Hertz Global Holdings, Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh*, 530 F. Supp. 3d 447, 457 (interpreting an insurance policy with the same language as the Policy at issue to mean that "'Securities Claims' does include 'Claims,' but *only* if

14

### 2. ALLEGING A VIOLATION OF ANY LAW REGULATING SECURITIES

Setting aside the investigation issue, a **Securities Claim** must also allege a "violation of" any law regulating securities.[58] Clear Channel posits that a **Claim**, here the Tolling Request, need not include any allegation because "Clear Channel was **not** required to prove it had been 'accuse[d]' of wrongdoing."[59] All that is required is that the Tolling Request arise out of alleged violations of federal securities laws which in turn gives rise to a **Securities Claim**.[60] Clear Channel is correct in one respect, but also seems to confuse the definition of **Securities Claim** and **Loss**. First, Clear Channel need not prove it had been accused of wrongdoing, but under the Policy a **Securities Claim**, which includes a written request for tolling, must include an *allegation* of wrongdoing. Clear Channel's interpretation would render the word "alleging" meaningless. Second, it is the **Loss**, here the response costs, that must arise from any wrongdoing, not the Tolling Request.

AIG contends "alleging," a variant of the verb "allege," which means "[t]o assert as true, esp[ecially] that someone has done something wrong, though no

---

they [] (a) are *not* 'investigation[s]' and (b) allege violations of securities laws . . . . Therefore, to the extent a "Claim" is an investigation . . . [an Organization] is expressly barred from recovering under the policy.") (emphasis in original).

[58] AIG Policy § 2(uu).

[59] Reply Br. at 5. (emphasis in original).

[60] Op. Br. at 23.

occasion for definitive proof has yet occurred."[61]  The SEC Tolling Request states: "the Staff would like to enter into an agreement with Clear Channel Outdoor Holdings, Inc. to toll the running of the statute of limitations applicable to any enforcement action against Clear Channel for one year."[62]  Applying the plain meaning of words, the Tolling Request fails to allege any violation of securities law.

\* \* \*

The Court is bound to interpret clear and unambiguous terms according to their ordinary meaning as long as such an interpretation gives each provision and term effect, so as not to render any part of the contract mere surplusage.[63]  Applying the principles of contract interpretation to this case, the Court concludes that the Policy is unambiguous, even though the parties do not agree on its proper construction,[64] because only one interpretation may reasonably be ascribed to it. Considering language within the definition of **Securities Claim**, the only reasonable interpretation is that it excludes coverage of investigations of **Organizations**, including any written request to toll or waive an applicable statute of limitations

---

[61] *Id*. at 31 (citing *Allege*, Black's Law Dictionary (12th ed. 2024).  Clear Channel does not dispute this definition.

[62] Tolling Request at 1.

[63] *Aearo Technologies LLC v. ACE American Insurance Company*, 2024 WL 3495121 at \*6 (Del. Super. July 16, 2024) (citing *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010)).

[64] *See GMG Capital Investments*, 36 A.3d at 780.

16

made as part of an investigation, and must allege a violation of securities law.[65] For these reasons, the Tolling Request is not a **Securities Claim** as defined in the Policy.

### B. THE TOLLING REQUEST DOES NOT SEEK RELIEF "FOR ANY WRONGFUL ACT."

Even if the Tolling Request is a **Securities Claim**, it still would not trigger coverage. Under the Policy, AIG agreed to pay for Clear Channel's **Losses** arising from any **Securities Claim** "for any **Wrongful Act**."[66] Accordingly, to qualify for coverage, Clear Channel's response costs must result from a **Securities Claim** "for any **Wrongful Act** of [Clear Channel]." The Tolling Request does not meet this requirement.

AIG contends, and Clear Channel does not dispute, that in order for a **Securities Claim** to be "for" a **Wrongful Act**, it must seek redress or relief in response to any corporate act. As noted above, the SEC Tolling Request states: "the Staff would like to enter into an agreement with Clear Channel Outdoor Holdings, Inc. to toll the running of the statute of limitations applicable to any enforcement action against Clear Channel for one year."[67] Not only are there no allegations of wrongdoing, but the Tolling Request does also not seek redress or relief for any

---

[65] Because the Court finds the Policy is unambiguous, the Court need not consider the Declaration of Paul Atkins and, thus, Clear Channel's Motion to Strike the Declaration of Paul Atkins is moot.

[66] AIG Policy § 1(B)(i).

[67] Tolling Request at 1.

corporate act. The SEC sought to toll the statute of limitations so that it could determine whether Clear Channel had committed any "corporate act."[68]

The Policy here provides coverage for **Securities Claims** *only if* that **Securities Claim** is for any **Wrongful Act** of Clear Channel. Therefore, even if the Tolling Request qualifies as a **Securities Claim**, because the Tolling Request does seek relief for any **Wrongful Act**, the Tolling Response does not trigger AIG's duty to pay Clear Channel's response costs.

## V. <u>CONCLUSION</u>

In conclusion, the Tolling Request does not trigger AIG's duty to advance defense costs. Accordingly, the Court **DENIES** Clear Channel's Motion for Partial Summary Judgment.

**IT IS SO ORDERED.**

*/s/ Patricia A. Winston*
**Patricia A. Winston, Judge**

---

[68] Clear Channel noted in its papers and at oral argument that its Motion only seeks a determination that the AIG breached the Policy by failing to acknowledge the SEC's Tolling Request triggered AIG's duty to pay Clear Channel's response costs. Reply Br. at 2 n.2. Clear Channel further states that it has not abandoned its right to seek a determination, in the alternative, that another coverage-triggering event obligated AIG to begin paying response costs at a later point in time. Accordingly, the Court will not determine whether the Tolling Agreement, the Formal Order, or any other event triggered AIG's duty to pay response costs.

18